IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

USDC- GREENBELT
'26 MAR 20 AM8:47

<table>
<tr><td>ANTOINE JAVON HARE,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>Plaintiff,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td>Civil Action No.: LKG-24-588</td></tr>
<tr><td>v.</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td>Dated: March 19, 2026</td></tr>
<tr><td>OFFICER H. STANBACK, et al.,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>Defendants.</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
</table>

## MEMORANDUM

Self-represented Plaintiff Antoine Javon Hare brings this civil rights action against Officer H. Stanback and Zewdiensh Admassu, RN. ECF Nos. 4, 14. Hare claims that, while he was incarcerated at the Upper Marlboro Detention Center he was subjected to excessive force and RN Admassu failed to adequately treat his injuries. Admassu has filed a Motion for Summary Judgment. ECF No. 43. Hare was notified of his opportunity to respond to the Motion but, to date, has failed to do so. ECF No. 44. The Motion is ripe for review, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2025). For the foregoing reasons, Admassu's Motion will be granted.

I.    BACKGROUND

a.  Verified Complaint Allegations

The morning of July 28, 2022, Hare was in an altercation with another inmate on Housing Unit H-12 at the Prince George's County Correctional Center ("PGCCC"). ECF No. 4 at 2. Emergency Response Team ("ERT") Officers responded to the incident. Officer Harrison maced Hare and Officer Stanback "slammed/tackled" him to the ground. *Id.* Stanback instructed Hare to put his arms behind his back to be handcuffed; Hare responded, explaining that he could not feel his right arm. *Id.* Stanback then "forcefully bent" his arm back causing Hare to scream and plead for him to stop. *Id.* Stanback persisted. Hare states that he was refused grievance forms to complain about the use of force incident because his "reasoning was not good enough." *Id.* at 2-3. When Hare was finally able to file a grievance, it was denied because there was nothing to be done to solve the problem. *Id.* at 3.

Stanback and the other ERT Officers escorted Hare to a shower to wash away the mace and then to medical for evaluation. ECF No. 4 at 2. His vitals were checked and he was kept overnight after he complained about his arm. *Id.* The following morning, he was moved to disciplinary segregation where he awaited his hearing for three days with two other inmates. *Id.* Hare pleaded not guilty to the charged infractions and was later acquitted. *Id.*; ECF No. 14 at 5. Hare later returned to medical and requested that Nurse Asaba and Nurse Admassu send him to the hospital to have his arm evaluated. *Id.* His request was denied; they told him that the hospital would "just do an X-ray." *Id.* In the following two months, Hare was sent to the Capital Regional Medical Center for an infected finger. *Id.* at 3. He reported his arm injury and after an MRI, Hare was diagnosed with a dislocation and torn ligaments. *Id.* Hare cannot extend the fingers on his right hand and can feel his bones grinding against each other when he exercises. *Id.*

Hare brings claims against Defendants pursuant to 42 U.S.C. § 1983 for violation of his Eighth Amendment rights. However, as Hare was a pretrial detainee at all times relevant to the Complaint, his claims are governed by the Fourteenth Amendment. *See* ECF No. 14 at 3. He seeks declaratory, injunctive, and monetary relief. ECF No. 4 at 4-5.

### b. Medical Records

On July 28, 2022, Hare saw PA Bethel Asres complaining of a hand injury following an altercation. ECF 43-3 at 6. Following an examination, PA Asres noted a limited range of motion in Hare's right shoulder during active movement, possibly a sprain. *Id.* PA Asres prescribed Hare Naproxen 500mg twice daily for seven days and ordered an x-ray of his forearm. *Id.* at 7, 11-12. Hare remained in the medical clinic and was seen again by RN Admassu in the evening. *Id.* at 13. Admassu avers that Hare was in the clinic following an officer use of force incident, had been cleared, and was waiting for a room in disciplinary segregation. ECF No. 43-2 at ¶ 6. Admassu states that it was PA Asres who cleared him, not her and she "did not see any indication that the patient's shoulder was dislocated." *Id.* at ¶ 7. The radiology report for an August 31, 2022, x-ray states that Hare's joints were intact and normal; there was no shoulder separation, fracture, or dislocation. ECF No. 43-3 at 15.

Hare remained in the clinic throughout August awaiting his x-ray and cell assignment. ECF No. 43-3 at 24-25. On August 1, 2022, RN Saba Asrat noted that Hare was reclassified to observation. *Id.* at 24. That evening, RN Admassu noted that Hare was on the "MAT program"

and was being medicated as ordered. *Id.* On August 3, 2022, RN Emily Bello noted that Hare was in an isolation cell and had been cutting and hiding suboxone in his mouth. *Id.* An x-ray was also conducted but counsel notes that the radiology report was not produced with the medical records received from PGCCC. ECF No. 43-1 at 4, n.2. Hare continued to be seen daily in the infirmary. *See* ECF No. 43-3 at 22-24. Dr. Meskerem Asresahegn renewed the Naproxen prescription on August 4, 2022, for five days. *Id.* at 24. It was renewed again on August 10 after he complained of a sharp pain in his right arm. *Id.* at 22-23.

RN Bello saw Hare for an unscheduled sick call; he complained that his left index finger was swelling after injuring it in the shower. ECF No. 43-3 at 30-34. Bello ordered an x-ray, but it was cancelled when he was later sent to the hospital. *Id.* at 33; ECF No. 43-4 at 3. Dr. Asresahegn prescribed Hare a 10-day course of antibiotics. ECF No. 43-4 at 2. Hare reported to Dr. Manash Das on August 20, 2022, that the swelling in his finger was not improving and that the pain was severe and throbbing. *Id.* at 8. Dr. Das noted that Hare had blistery swelling, and his finger was extremely tender to touch. *Id.* Additionally, there was a "blister on palmar surface" and a possible right wrist drop. *Id.* Dr. Das diagnosed a likely abscess/cellulitis and opined that it required evaluation by a hand surgeon; he referred Hare to the emergency room. *Id.* at 9. Hare was admitted to University of Maryland Capital Regional Health between August 20-27, 2022, to treat the cellulitis in his left index finger. *Id.* at 11-21. Upon his return to PGCCC, Dr. Asresahegn prescribed eight days of Bactrim and three days of Tylenol with codeine for pain. *Id.* at 25-26.

Hare had a follow-up appointment with Dr. Das on August 30, 2022. ECF No. 43-4 at 27-31. Dr. Das noted that Hare had undergone surgical intervention while hospitalized and was doing daily dressing changes. *Id.* at 27. Hare reported that he had received an MRI of his right shoulder at the hospital showing that it was dislocated, however, there is no mention of his shoulder injury in the discharge records. *See id.* Dr. Das observed that Hare was unable to move his shoulder without assistance and noted that he would benefit from physical therapy. *Id.* at 28. He submitted a consultation request for physical therapy that day. *Id.* at 30. As noted above, the following day, Hare's shoulder was x-rayed the next day showing no dislocation.

Hare's index finger continued to be monitored in the infirmary. On September 9, 2022, RN Bello saw Hare, who requested to return to his housing unit. ECF No. 43-3 at 16. Because his return was against medical advice, Bello contacted a doctor who had Hare sign a Refusal of

Clinical Services form. *Id.*; ECF No. 43-5 at 10. Bello noted that he was moving his right arm and exercising his hand and shoulder. ECF No. 43-3 at 16. Hare returned to his housing unit and assigned a bottom bunk. *Id.*

## II.    LEGAL STANDARD

Summary judgment is appropriate when the moving party establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To meet its burden, the party must identify "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" in support of its position. Fed. R. Civ. P. 56(c)(1)(A). Then, "[t]o avoid summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue for trial." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 205 (4th Cir. 2019) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The opposing party must identify more than a "scintilla of evidence" in support of its position to defeat the motion for summary judgment. *Id.* at 251. The Court "should not weigh the evidence." *Perkins*, 936 F.3d at 205 (quoting *Anderson*, 477 U.S. at 249). However, if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," then summary judgment is proper. *Id.* (quoting *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). In ruling on a motion for summary judgment, this Court "view[s] the facts and inferences drawn from the facts in the light most favorable to . . . the nonmoving party." *Perkins*, 936 F.3d at 205 (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 958 (4th Cir. 1996)).

## III.    Discussion

The Due Process Clause of the Fourteenth Amendment protects the rights of pretrial detainees to receive adequate medical care. *Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001) (stating that "the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment, mandates the provision of medical care" to pretrial detainees "who require it") (citation omitted)). The Fourteenth Amendment "protects pretrial detainees from 'governmental action' that is not 'rationally related to a legitimate nonpunitive governmental purpose' or that is

4

'excessive in relation to that purpose.'" *Short v. Hartman*, 87 F.4th 593, 608–09 (4th Cir. 2023) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015)).

"To state a claim of deliberate indifference to a medical need ... a pretrial detainee must plead that (1) they had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that the detainee had that condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the detainee was harmed." *Short*, 87 F.4th at 611. This means that a pretrial detainee "no longer has to show that the defendant had actual knowledge of the detainee's serious medical condition and consciously disregarded the risk that their action or failure to act would result in harm." *Id.*

Viewing the evidence in the light most favorable to Hare, the Court finds that RN Admassu is entitled to judgment in her favor. PA Asres had assessed a possible sprain and ordered an x-ray the same day that Admassu saw Hare for the first time. A possible shoulder sprain does not present a substantial risk of harm. Even if it did, nothing in the record demonstrates that Admassu acted recklessly in response to his injury or that Hare was harmed as a result. She did not observe that Hare had a shoulder dislocation and PA Asres had documented that it was a possible sprain; thus, it was reasonable to wait for the x-ray results. The x-ray showed that Hare's shoulder was not in fact separated, fractured, or dislocated. Subsequently, the record, at most, shows that Admassu recorded PA Asres' decision to clear him to return to his housing unit. As such, Admassu had no reason to believe that her actions posed an unjustifiable risk of harm to Hare. Admassu's Motion for Summary Judgment will be granted.

## IV. CONCLUSION

For the foregoing reasons, RN Admassu's Motion for Summary Judgment will be granted. Defendant Officer Stanback's Motion for Summary Judgment remains pending. Stanback's counsel shall file an update as to whether Hare has received their video exhibit at FCI-Sheridan.

A separate Order follows.

3-19-2026
Date

LYDIA K. GRIGGSBY
United States District Judge

5